# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

TIMOTHY FLYNN, individually and on behalf of all others similarly situated,

          Plaintiff,

v.

VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG, AUDI AG, AUDI OF AMERICA LLC, and AUDI OF AMERICA, INC.,

          Defendants.

No.

Honorable

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................. 1

II.  NATURE OF THE ACTION ................................................................. 1

III. PARTIES ............................................................................................... 7

IV.  JURISDICTION AND VENUE ........................................................... 9

V.   FACTS ................................................................................................ 15

    A.   Defendants Tout Their Diesel Vehicles as Being Fuel
        Efficient and Good for the Environment .......................................... 15

    B.   Volkswagen Intentionally Hid the Excessive and Illegal
        Levels of Pollution Emitted from its Cars ....................................... 19

    C.   Defendants Have Profited Handsomely From Their
        Diesel Vehicles ................................................................................ 26

    D.   Volkswagen's Illegal Actions Have Caused Class
        Members Significant Harm ............................................................... 27

    E.   The Federal Authorities' Investigation of Volkswagen
        Centers on Its Activities in Michigan .............................................. 30

VI.  PLAINTIFF'S FACTS ........................................................................ 33

    A.   Plaintiff Timothy Flynn ................................................................... 33

VII. CLASS ACTION ALLEGATIONS ................................................... 34

        1.   Numerosity: Federal Rule of Civil Procedure
            23(a)(1) .................................................................................. 35

        2.   Commonality and Predominance: Federal Rule of
            Civil Procedure 23(a)(2) and 23(b)(3) ................................. 35

        3.   Typicality: Federal Rule of Civil Procedure
            23(a)(3) .................................................................................. 37

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

4.   Adequacy: Federal Rule of Civil Procedure 23(a)(4) ...................................................................37

5.   Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2) ....................37

6.   Superiority: Federal Rule of Civil Procedure 23(b)(3) ...................................................................37

VIII.   ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED ................................................................................38

A.   Discovery Rule Tolling ...................................................38

B.   Tolling Due To Fraudulent Concealment .......................................40

C.   Estoppel ........................................................................40

IX.   CAUSES OF ACTION ................................................................41

A.   Claims Asserted on Behalf of the Class ............................................41

COUNT I: FRAUD BY CONCEALMENT (Common Law) ...................................................................41

COUNT II: BREACH OF CONTRACT .........................................48

COUNT III: BREACH OF EXPRESS WARRANTY ....................50

COUNT IV: BREACH OF IMPLIED WARRANTY ....................52

COUNT V: IMPLIED AND WRITTEN WARRANTY Magnuson - Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*) ...................................................................54

COUNT VI: UNJUST ENRICHMENT ...........................................56

COUNT VII: VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") 18 U.S.C. §§ 1961, *et seq.* ...........................................................56

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

B.      State-Specific Claims ..........................................................................78

        COUNT VIII: VIOLATION OF MICHIGAN
                CONSUMER PROTECTION ACT (Mich. Comp.
                Laws §§ 445.901, *et seq.*) ......................................................78

        COUNT VIX: VIOLATION OF THE WASHINGTON
                CONSUMER PROTECTION ACT ("CPA")
                (RCW §§ 719.86, *et seq.*).........................................................79

X.      REQUEST FOR RELIEF ..........................................................................82

XI.     DEMAND FOR JURY TRIAL ..................................................................83

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# I.     INTRODUCTION

Plaintiff Timothy Flynn, ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following against Volkswagen Group of America, Inc., Volkswagen AG, Audi AG, Audi of America LLC, and Audi of America, Inc. ("Defendants" or "Volkswagen"), based where applicable on personal knowledge, information and belief, and the investigation of counsel. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

# II.     NATURE OF THE ACTION

1.     This action is not about corporate negligence; rather, it is about a global auto manufacturer's intentional deception of well-meaning, conscientious consumers and regulators, and its large-scale, misguided plan to profit by gaming the system rather than playing by the rules.

2.     This nationwide class action concerns the intentional installation of so-called defeat devices on at least 482,000 diesel Volkswagen and Audi vehicles sold in the United States since 2009 ("Defeat Device Vehicles"). Defendants marketed those vehicles as environmentally-friendly cars that possessed the holy grail of automotive qualities: extremely high fuel efficiency and performance with very low emissions. Although Defendants successfully marketed these expensive cars as "green," their environmentally-friendly representations were a sham.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Defendants did not actually make cars with those desirable and advertised attributes.

3.     According to a Notice of Violation ("NOV"), issued by the U.S. Environmental Protection Agency (EPA), on September 18, 2015, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles: Model Year ("MY") 2009-2015 Jetta; MY 2009-2014 Jetta Sportwagen, MY 2012-2015 Beetle and Beetle Convertible; MY 2010-2015 Golf; MY 2015 Golf Sportwagen; MY 2012-2015 Passat; and MY 2010-2015 Audi A3. These are the "Defeat Device Vehicles." The California Air Resources Board is currently investigating whether the Defendants installed the device in other cars as well, so additional vehicle models and model years may be added to this list when new facts are discovered.

4.     Instead of delivering on their promises of extremely high fuel mileage coupled with low emissions, Defendants devised a way to make it appear that their cars did what they said they would when, in fact, they did not. Put simply, Defendants lied and continued to lie over a period of years.

5.     As Michael Horn, President and CEO of Volkswagen Group of America, reportedly admitted before unveiling the 2016 Volkswagen Passat in New York on September 21, 2015:

> As you have seen since Friday, the EPA, the Environmental Protection Agency, has issued a statement and reality that Volkswagen Group

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

manipulated engine software in our TDI diesel cars, and we violated emissions standards. The CEO of our parent company, Dr. Martin Winterkorn, said yesterday Volkswagen will fully cooperate with the responsible agencies, and much, much more important as I see it, he stated that he was personally and deeply sorry for this—that Volkswagen has broken the trust of our customers, and the public here in America. And lastly he stated that this matter, and this is I think common sense, now this is the first priority for him personally and for the entire Board of Management. So let's be clear about this: our company was dishonest with the EPA and the California Air Resources Board, and with all of you. And in my German words, we've totally screwed up. We must fix those cars, and prevent this from ever happening again, and we have to make things right—with the government, the public, our customers, our employees, and also very importantly our dealers. This kind of behavior, I can tell you out of my heart, is completely inconsistent with our core values. The three core values of our brand are value, innovation, and in this context very importantly, responsibility: for our employees, for our stakeholders, and for the environment. So it goes totally against what we believe is right. Along with our German headquarters, we are committed to do what must be done, and to begin to restore your trust.

6.     Volkswagen "screwed up" by intentionally designing and installing

defeat devices that work by switching on the full emissions control systems in

Defendants' cars only when the car is undergoing periodic emissions testing. The

technology needed to control emissions from Defendants' cars to meet state and

federal emissions regulations reduces their performance, limiting acceleration,

torque, and fuel efficiency.

7.     To hide this, the defeat device simply shuts off most of the emissions

control systems in the car once the car has completed its emissions test. While that

might have made the cars more fun to drive, it resulted in Defendants' cars sending

CLASS ACTION COMPLAINT - Page 3

up to 40 times as much pollution into the environment as is allowed under the

Clean Air Act and state regulations.

8.      As of September 21, 2015, *The New York Times* reported that while it

is possible to lower the levels of nitrogen oxide emitted by diesel engines, the

software Volkswagen installed instead:

> [S]idestepped this trade-off by giving a misleadingly low nitrogen-oxide reading during [standard emissions] tests. The software measured factors like the position of the steering wheel, the vehicle's speed and even barometric pressure to sense when the car was being tested….

9.      On September 30, 2015, *Compound Interest* published a graphic

describing the emissions control devices installed on cars, and explaining that

Defendants' cars shut off some emissions control equipment when software

"detected when it was in test conditions (potentially by monitoring steering wheel

movement or traction control deactivation)."[1]

---

[1] http://www.compoundchem.com/wp-content/uploads/2015/09/Reducing-Vehicle-Emissions-Using-Chemistry-%E2%80%93-The-Volkswagen-Scandal.png (last visited Oct. 6, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



10.     Volkswagen has admitted that approximately 11 million vehicles worldwide are affected by its deception. Defendants' stocks have plummeted and it reportedly is "setting aside the equivalent of half a year's profits—6.5 billion euros, or about $7.3 billion" in a preemptive maneuver to downplay public scrutiny. In a statement issued on September 18, 2015, by the Executive Committee of Volkswagen AG's Supervisory Board, the Committee confessed that it "recognizes…the economic damage caused [by the manipulation of the emissions data.]"

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

11.     *The New York Times* reported on September 23, 2015 that Volkswagen AG's former chief executive, Martin Winterkorn resigned, "taking responsibility for an emissions cheating scandal that has gravely damaged the carmaker's reputation." There was reportedly chatter amongst Volkswagen's executive committee of the supervisory board that criminal proceedings may begin although Winterkorn claims to have "had no knowledge of the manipulation of the emissions data."

12.     As reported by *Reuters*, Volkswagen named the head of its Porsche unit, Matthias Mueller, as its new chief executive. Mueller claims, "[u]nder my leadership, Volkswagen will do all it can to develop and implement the strictest compliance and governance standards in the whole industry."

13.     That promise may be a tall order considering Germany's transport minister announced that the carmaker has "manipulated test results for about 2.8 million vehicles" in Germany, which is "nearly six times as many as it has admitted to falsifying in the United States." That indicates that Defendants are "cheating on a bigger scale than previously thought."

14.     Defendants' violations are explained in a Notice of Violation the EPA issued to Defendants, as well as a letter from the California Air Resources Board ("CARB"), copies of which are attached to this Class Action Complaint as Exhibits A and B, respectively.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

15.     Because of Defendants' actions, the cars it sold to Plaintiff are not what Volkswagen promised. They are not environmentally friendly, "clean" diesels. Instead, they are dirty diesels: cars that pollute so much that they violate state and federal environmental protection laws. Moreover, when the emissions systems designed to decrease pollution are activated, the cars' performance is diminished and they get worse mileage than advertised by Volkswagen.

16.     These untenable circumstances not only undermine the reasons consumers paid a premium to lease or own their purportedly "clean" diesel cars, but substantially decrease the current and resale value of the vehicles.

### III.   PARTIES

17.     Plaintiff Timothy Flynn is a resident and citizen of Gig Harbor, Pierce County, Washington.

18.     Volkswagen Group of America, Inc. is a corporation doing business in every U.S. state and the District of Columbia and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).

19.     Volkswagen AG is the parent corporation and sole owner of Volkswagen Group of America, Inc. (collectively "Volkswagen"). Volkswagen AG is based in Germany and directly controls and directs the actions of

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Volkswagen Group of America, Inc., which acts as its agent in the United States. As a result, this Court has specific jurisdiction over Volkswagen AG.

20.     Audi AG is based and incorporated in Germany and is a subsidiary of Volkswagen AG. Audi AG is an agent of Volkswagen AG and, in part, directs the operations of Audi of America, Inc. and Audi of America LLC.

21.     Audi of America, Inc. is a corporation doing business in every state and the District of Columbia, and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Audi is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).

22.     Audi of America LLC is a Delaware corporation doing business in every state and the District of Columbia, with its principal place of business at 3800 W. Hamlin Road, Auburn Hills, Michigan 48326. Audi is therefore a citizen of Delaware and Michigan. *See* 28 U.S.C. § 1332(d)(10).

23.     At all relevant times, Volkswagen AG and other Defendants, each of which is a direct or indirect subsidiary and agent of Volkswagen AG, manufactured, distributed, sold, leased, and warranted the Defeat Device Vehicles under the Volkswagen and Audi brand names throughout the nation. For this reason, throughout this Complaint, Volkswagen AG and these direct and indirect subsidiaries are referred to collectively as "Volkswagen." Volkswagen and/or its

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

agents designed the "CleanDiesel" engines and engine control systems in the Defeat Device Vehicles, including the "defeat device." Volkswagen also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Defeat Device Vehicles.

## IV.   JURISDICTION AND VENUE

24.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

25.     This Court has personal jurisdiction over Defendants Volkswagen Group of America, Inc., Audi of America LLC, and Audi of America, Inc., because they conduct business in Michigan and have sufficient minimum contacts with Michigan.

26.     This Court has specific jurisdiction over Volkswagen AG and Audi AG because they have purposefully availed themselves of this forum by directing their agents and distributors—Volkswagen Group of America, Inc., Audi of America, Inc. and Audi of America LLC—to take action here.

27.     Volkswagen AG is the sole owner of Volkswagen Group of America, Inc., and, upon information and belief, controls 99.55% of Audi AG. Upon

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

information and belief, Audi of America LLC is an operating subsidiary of Audi

AG. Audi of America, Inc. is a subsidiary of Volkswagen of America, Inc. At all

relevant times, Volkswagen AG used and uses its agent Audi AG to develop and

manufacture Audi branded vehicles, and used and uses its agent Volkswagen

Group of America, Inc. to sell Volkswagen- and Audi-branded cars in the United

States. Through its agents Audi AG and Volkswagen Group of America, Inc.,

Volkswagen AG also directs the actions of both Audi of America, Inc. and Audi of

America LLC.

28.     Volkswagen AG uses its agent Volkswagen Group of America, Inc.,

to perform the critical work of developing, manufacturing, distributing, and

marketing the Defeat Device Vehicles in Michigan and throughout the United

States. Volkswagen AG also intimately directs the actions of Volkswagen Group

of America, Inc., ranging from minute production line decisions to broad

marketing strategies.

29.     Audi AG and Volkswagen Group of America, Inc., in turn, direct and

use Audi of America, Inc. and Audi of America LLC for the portion of marketing

and customer relations relating to the sales of Audi-branded vehicles in Michigan

and throughout the United States.

30.     The remarkable level of centralized and intimate control Volkswagen

AG and former CEO Winterkorn exert or have exerted over Volkswagen Group of

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

America, Inc. and other Volkswagen subsidiaries is well-documented. Volkswagen AG itself describes this highly-centralized structure in its corporate governance document as follows: Volkswagen AG "targets and requirements [are] laid down by the Board of Management of Volkswagen AG or the Group Board of Management [and] must be complied with in accordance with the applicable legal framework."

31.     This top-down governance manifests in Volkswagen AG's intimate management of Volkswagen Group of America, Inc. For example, in 2011, when Dr. Winterkorn visited the newly built Volkswagen plant in Tennessee, *Bloomberg Business* reported that "he berated staff for hanging chrome parts for air vents, doors and gear shifts on the wall. To check that they uniformly glistened before agreeing to use them in the sedan, he wanted them displayed on a table with light shining down at the same angle that customers would see the parts in the car."

32.     That single plant in Chattanooga, Tennessee is Volkswagen AG's only assembly plant in the United States, and it conducts final assembly of only one of the numerous models that Volkswagen AG sells in the United States. Even then, the majority of components and parts are manufactured in Volkswagen AG factories in Europe and around the world, or purchased from vendors, and shipped to Tennessee to be assembled. The other models that Volkswagen Group of America, Inc., Audi of America, Inc., and Audi of America LLC market and sell in

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the United States, including vehicles at issue in this lawsuit, are assembled

elsewhere in the world, including in Puebla, Mexico and Ingolstadt and Wolfsburg,

Germany. The 2.0 liter TDI engines in the Defeat Device Vehicles are among the

components manufactured by Volkswagen AG factories outside the United States,

as are the exhaust system components used to regulate emissions. In sum,

Volkswagen AG exerts significant, and sometimes total, control over the design,

technology, marketing, and manufacturing of the vehicles it sells through

Volkswagen Group of America, Inc., Audi of America, Inc., and Audi of America

LLC in Michigan and throughout the United States.

33.     *Bloomberg Business* has also noted that "[d]ecision-making at

Volkswagen is highly centralized. Winterkorn and a couple dozen managers vet

product plans in Wolfsburg, including detailed lists of components that

differentiate between new and standardized parts. Winterkorn was aiming to loosen

that structure by pushing more authority to brand and regional managers."

Volkswagen AG's attempts to decentralize are not new; indeed as far back as 2007

*The New York Times* reported that Volkswagen AG was undergoing a "broad

reorganization that would centralize control over its myriad brands [including

Volkswagen Group of America, Inc.] and cement the power of its new chief

executive, Martin Winterkorn." Whatever decentralization Mr. Winterkorn was

hoping to accomplish, however, has not yet come to pass, as he has now stepped

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

down as Volkswagen's CEO. In short, Volkswagen AG tightly controls the actions

of its agent, Volkswagen Group of America, Inc., to perform the critical task of

selling its cars in the United States. As a result, this Court has specific jurisdiction

over Volkswagen AG.

34.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to the claims occurred and/or

emanated from this District, as set forth in more detail below, and because

Defendants have caused harm to Class members residing in this District, as

explained below.

35.     Volkswagen conducts substantial business in this District. Until

approximately 2010, Volkswagen Group of America, Inc. was headquartered in

Auburn Hills, Michigan. And between 2008 and 2013, Volkswagen "invested

about $12 million and added hundreds of employees at its offices in Auburn Hills."

36.     Many of the wrongdoings giving rise to Plaintiff's claims emanated

from this District. Of particular importance, Volkswagen's Engineering and

Environmental Office—where, upon information and belief, the portion of the

defeat device scheme that took place in the United States was centralized—was

located at Auburn Hills, Michigan. Because Volkswagen maintained, and

continues to maintain, critical operations in this District, on information and belief,

employees in this district witnessed and/or participated in the fraudulent activities

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

giving rise to Plaintiff's claims. Notably, when the EPA issued its Notice of Violation, described in greater detail below, it was addressed to only two people: the Executive Vice President of Public Affairs and General Counsel at Volkswagen's Virginia offices, and Stuart Johnson, the General Manager of the Engineering and Environmental Office, at Volkswagen's Auburn Hills center.

37.     In addition, Volkswagen has marketed, advertised, sold and leased the Class Vehicles in this District, and has caused harm to Class Members residing in this District.

38.     Thus, venue is proper in this District because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

39.     Finally, Volkswagen has already chosen to litigate this matter in Michigan. The website that Volkswagen created to communicate with its American customers about Defeat Device Vehicles, www.vwdieselinfo.com, provides that visitors to that website, and Volkswagen, "hereby consent to the jurisdiction of the Michigan courts and waive any objections as to personal jurisdiction or as to the laying of venue in such courts due to inconvenient forum or any other basis."[2]

---

[2] Volkswagen Diesel Information, Terms of Use Policy, https://www.vwdieselinfo.com/terms-of-use-policy%20/ (last visited Oct. 14, 2015). Confusingly, the same online communication also states that the parties agree to the exclusive jurisdiction of "the state and federal courts for the County of Fairfax, Virginia, U.S.A." *Id.* That confusion appears to have been resolved in an update to the nearly identical language of the terms governing VW.com for 2008 to 2015, which reference only Michigan. Volkswagen Group of America,

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# V.    FACTS

40.    Defendants intentionally designed, marketed, and sold cars in order to mislead consumers and regulators about the amount of pollution those cars created and the fuel efficiency they produced. Despite touting themselves as an environmentally-conscientious company that produced efficient, well-handling cars for people who cared about the environment, Defendants sold expensive cars that produced pollution at orders of a magnitude above federal and state regulations, and then intentionally and knowingly hid this truth.

## A.    Defendants Tout Their Diesel Vehicles as Being Fuel Efficient and Good for the Environment

41.    For years, Volkswagen has advertised its diesel vehicles as low-emission, fuel-efficient cars. Indeed, this marketing message is at the core of its image in the United States. It has been a successful advertising campaign: Volkswagen has become the largest seller of diesel passenger vehicles in the United States.

42.    Defendants' success is based in large part on promoting their diesel cars as "clean" and "green" vehicles. Indeed, being both highly efficient and "clean" are the centerpieces of Defendants' diesel engine marketing campaign. "CleanDiesel" is in the very name of the vehicles about which Defendants lied.

---

Terms & Agreements, http://update.vw.com/terms_agreements.htm (last visited Oct. 14, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



43.    Long after Volkswagen became aware that its vehicles were deliberately designed to cheat emissions tests, and even after EPA issued a Notice of Violation, Volkswagen continued to mislead consumers, including in advertisements appearing on its webpage as recently as September 21, 2015.

44.    Those ads, an example of which is pictured below, were removed from Volkswagen's websites over the course of several days after the news broke. For example, at the time Defendants' deception came to light, Defendants continued to represent the Defeat Device Vehicles as "CleanDiesel":

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



45.     Volkswagen's apparent concern for the environment is evident
beyond just the model names and purported attributes of their vehicles. For
example, on the "Environment" page of its website, Volkswagen Group of
America states that it takes "environmental responsibility very seriously. When it
comes to making our cars as green as possible, Volkswagen has an integrated
strategy focused on reducing fuel consumption and emissions, building the world's
cleanest diesel engines and developing totally new power systems, which utilize
new fuel alternatives."

46.     Volkswagen bolsters its apparent environmental bona fides by
trumpeting the fact that the Audi A3 TDI and VW Jetta TDI were named the 2010
Green Car of the Year and the 2009 Green Car of the Year, respectively. Shortly
after the truth about Volkswagen came out in late September 2015, *Green Car
Journal* rescinded those awards.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

47.     Defendants also recently launched a "Think Blue" program, which they explained is part of their policy of being "more responsible on the road and more environmentally conscious—not just in our cars."

48.     Beyond merely advertising, Defendants supported and directed a website to promote their "clean" diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner," and includes this image:



49.     To promote its Audi brand, Volkswagen even goes so far as to use the tagline "Truth in Engineering":

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

50.     Unfortunately for consumers who bought Defendants' cars and for people who breathe the air into which Defendants' cars emit extraordinary amounts of pollutants, Defendants' engineering was far from "truthful." Volkswagen has designed and sold cars that emit pollutants at breath-taking levels, failing state and federal environmental regulations by incredible margins.

**B.      Volkswagen Intentionally Hid the Excessive and Illegal Levels of Pollution Emitted from its Cars**

51.     The EPA's investigation of Volkswagen was prompted by a May 15, 2014, publication titled "In-Use Emissions Testing of Light-Duty Diesel Vehicles in the United States" by the Center for Alternative Fuels, Engines & Emissions (CAFEE) at West Virginia University ("the CAFEE Report").

52.     The International Council of Clean Transportation (ICCT) contracted CAFEE to conduct in-use testing of three light-duty diesel vehicles. According to the CAFEE Report, when they tested those vehicles, "real-world NOx emissions were found to exceed the US-EPA … standard by a factor[s] of 5 to 35."

53.     While neither emissions testing on a dynometer (essentially a treadmill for a car) nor using set driving routes meant to simulate different operational situations—such as highway, city, or hilly routes—can perfectly duplicate all real-world driving, they provide approximations of expected emissions that allow regulators and testers to determine if cars' emissions are within tolerable limits.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

54.     CAFEE tested three vehicles, two of which were Volkswagens: a 2012 Jetta TDI and a 2013 Passat TDI, the latter of which was equipped with a urea catalyst system but also, apparently, a defeat device. On the dynometer, the Volkswagens' nitrous oxide emissions were well within allowable limits—because, it is now known, they were equipped with defeat devices that turned emissions controls fully on. But in real-world driving, these emissions controls were switched off, and the cars emitted nitrous oxides at levels orders of magnitude greater than EPA limits.

55.     In more strenuous operational situations requiring greater engine power, such as climbing steep hills, it is not surprising that a car might emit somewhat more than on a dynometer, but not by multiples or orders of magnitude. The chart below shows the test results for these cars' emissions on the dynometer compared to the EPA standard, and then in three real-world tests: one highway, one urban, and one a hilly rural route.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



56.     Those findings show that, contrary to Volkswagen's self-promotion as a "green" company, its diesel cars are unhealthy and unlawful.

57.     Defendants' defeat devices that cause those high levels of emissions are part of a computerized engine control system that monitors sensors throughout the cars' engine and exhaust systems, and controls operation of the cars' systems to ensure optimal performance. The functions controlled by those systems include fuel injection, valve and ignition timing, and, as in Volkswagen's "CleanDiesel" engines, operation of the engine's turbocharger. The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, air flow, and engine temperature.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

58.     These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

59.     Because modern cars include these sophisticated computers and sensors throughout the car's systems, emissions testing sometimes uses a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards. Emissions testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the car's own exhaust sensors during the testing procedure to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a probe inserted into the car's exhaust pipe to measure the chemicals emitted.

60.     Volkswagen programmed the engine control computers in the Defeat Device Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the car is not being emissions tested—that is, under the vast majority of operating conditions—the engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

61.    This graphic prepared by *Reuters* summarizes that process:



62.    In short, this software allows Defendants' Defeat Device Vehicles to

meet emissions standards in labs or state testing stations while permitting the

vehicles to emit nitrogen oxides (NOx) at up to 40 times the standard allowed

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

under United States laws and regulations during the normal operation of the vehicles.

63.     As the journal *Popular Mechanics* recently reported, non-Volkswagen diesels commonly use urea injection to "neutralize" NOx emission, but those systems add weight and complexity. "Everyone wondered how VW met emissions standards while foregoing urea injection. As it turns out, they didn't. It wasn't magical German engineering. Just plain old fraud," the journal reported.

64.     NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illnesses serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illnesses are at an acute risk of health effects from these pollutants.

65.     The Clean Air Act has strict emissions standards for vehicles, and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity. Under federal law, cars equipped with defeat devices,

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified.

66.     Remarkably, Volkswagen has already admitted that it violated state and federal laws, including CARB standards and the Clean Air Act:



67.     This is not the first time Volkswagen allegedly engineered vehicles to cheat emission standards. As reported by the *Los Angeles Times* on September 23, 2015, Volkswagen paid a $120,000 fine to EPA in 1974 in order to settle charges that "it gamed pollution control systems in four models by changing carburetor settings and shutting off an emissions-control system at low temperatures."

68.     Moreover, it appears Volkswagen was warned as long ago as 2007 by its suppliers and own employees not to cheat on emissions tests in its modern

Keller Rohrback L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

diesel engines. According to September 27, 2015 report by the *Associated Press*, "VW's internal investigation has found a 2007 letter from parts supplier Bosch warning Volkswagen not to use the software during regular operation." Also, "a Volkswagen technician raised concerns about illegal practices in connection with emissions levels in 2011."

69.    Despite those warnings, Volkswagen manufactured, marketed, and sold cars with defeat devices designed to allow for higher levels of emissions than those allowed by state and federal law, violating the Clean Air Act, defrauding its customers, and engaging in unfair competition under state and federal laws.

## C.    Defendants Have Profited Handsomely From Their Diesel Vehicles

70.    Defendants charge and consumers pay substantial premiums for the Defeat Device Vehicles. For example, according to Defendants' website, for the 2015 Volkswagen Jetta, the base S model with a gasoline engine has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, which includes a price premium of $2,860. The CleanDiesel premium compared to the highest trim Jetta models with a comparable four-cylinder turbocharged gasoline engine is substantially higher: the Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a 31% premium.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

71.     These premiums occur across all of the vehicles in which Defendants

installed its "defeat device" for emissions testing, ranging from roughly $1,000 for

a mid-tier Golf, to $2,900 for a base-level diesel Jetta, to nearly $7,000 for a top-

line diesel Passat.

**D.     Volkswagen's Illegal Actions Have Caused Class Members Significant Harm**

72.     The EPA has ordered Defendants to recall the Defeat Device Vehicles

and repair them so that they comply with EPA emissions requirements. But that

recall will not compensate Plaintiff and the class for the significant harm

Defendants' deception has caused. That is true for at least two reasons.

73.     First, any repairs performed as part of the recall are likely to diminish

the performance of the Defeat Device Vehicles. Volkswagen will likely not be able

to make those vehicles compliant with state and federal regulations without

degrading performance, fuel efficiency, or both. That is so because any solution

will likely involve reprogramming the Defeat Device Vehicles' software to engage

the emissions control equipment (which currently only operates when the vehicles

are being emissions tested) at all times in a manner that reduces engine power and

fuel economy to bring NOx emissions within legal limits. Plaintiff's and Class

members' cars will therefore not perform as advertised.

74.     Second, the recall cannot compensate for the financial damages

Plaintiff and Class members have suffered, including the premium Plaintiff and the

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Class paid to own or lease their "clean" diesel vehicles, the inevitable reduction in resale value caused by the recall, and the increase in fuel expenses as the vehicles become less efficient following reprogramming.

75.     Third, Plaintiff and Class members are already experiencing significant reputational harm as unwilling vectors for Defendants' pollution-producing vehicles.

76.     For those reasons, as a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit 40 times the allowed levels of NOx, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property.

77.     Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

78.     The resale values of Plaintiff's and Class members' vehicles have also dropped since the announcement of Volkswagen's emission defeat device. Kelley Blue Book, www.kbb.com, is known as the nationwide "go-to" pricing guide for used cars. Kelley Blue Book ("KBB") has an established car valuation

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

methodology and its values are broadly accepted in the industry by both buyers and sellers of used cars.

79.     For example, this information from Kelly Blue Book shows the resale value of a 2013 Jetta in very good condition with 2,400 miles has dropped nearly $1,000 in less than a week. The September 22, 2015 price quote (valid through September 24, 2015) was $16,573. Just five days later, on September 27, 2015 (valid through October 1, 2015), the same car received a KBB value of $15,878:



KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

80.     According to media sources, Volkswagen's recently ousted CEO, Martin Winterkorn, said in a statement that he was "deeply sorry that we have broken the trust of our customers and the public," and that Defendants would be suspending sales of some 2015 and 2016 vehicles with 2.0 liter diesel engines. While Defendants' very recent candor about its breach of trust is notable, it cannot compensate Plaintiff and Class members for the damages they have incurred.

81.     In sum, Volkswagen's deliberate strategy to value profit over the truth, human health, and the environment, has caused serious harm to consumers nationwide.

**E.     The Federal Authorities' Investigation of Volkswagen Centers on Its Activities in Michigan**

82.     According to *The Detroit News*, Defendants are under investigation by German prosecutors, at least 29 U.S. state attorney generals, and by the U.S. Justice Department aided by the Federal Bureau of Investigation (FBI).[3] These ongoing investigations are occurring in this District,[4] where the EPA has its National Vehicle & Fuel Emissions Laboratory in Ann Arbor and where Volkswagen has a significant and relevant presence.

---

[3] http://www.detroitnews.com/story/business/autos/foreign/2015/09/28/vw-senators/72989290/.

[4] "The FBI in Detroit is reportedly handling a US criminal investigation" as well. http://www.telegraph.co.uk/finance/newsbysector/industry/11895848/BREAKING-2.1-million-Audi-cars-fitted-with-VW-emissions-cheat-devices.html (last visited Oct. 6, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

83.   John German, the researcher who led the International Council on Clean Transportation investigation that brought Defendants' deception to light is also based in Ann Arbor.[5]

84.   EPA addressed its Notice of Violation to two individuals at Volkswagen: the General Counsel for Volkswagen Group of America, Inc. and Stuart Johnson, General Manager of the Engineering and Environmental Office of Volkswagen Group of America, Inc. in Auburn Hills, Michigan. Similarly, the California Air Resources Board ("CARB") also issued its notice of investigation regarding Volkswagen's use of defeat devices to Mr. Johnson at the Engineering and Environmental Office ("EEO") of Volkswagen Group of America, Inc. in Auburn Hills, Michigan.[6]

85.   Volkswagen's EEO office in Auburn Hills has been the hub of Volkswagen's engineering and environmental compliance activities in the United States,[7] as well as the source of its representations about its diesel engines in the United States.[8] On October 8, 2015, Volkswagen Group of America CEO Michael

---

[5] http://www.theguardian.com/business/2015/sep/26/volkswagen-scandal-emissions-tests-john-german-research (last visited Oct. 12, 2015).

[6] http://www.arb.ca.gov/newsrel/in_use_compliance_letter.pdf (last visited Oct. 6, 2015).

[7] http://athome.volkswagengroupamerica.com/documents/at_work_in_michigan.pdf (last visited Oct. 2, 2015).

[8] *See*, *e.g.*, http://www.mlive.com/auto/index.ssf/2013/08/volkswagen_announces_new_diese.html (last visited Oct. 6,

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Horn testified before the Energy & Commerce Committee of the United States House of Representatives that "[w]e have an office which is called EEO [Volkswagen's Engineering and Environmental Office] in Auburn Hills which is directly linked to the German research and development department. They work together. They get all the information, all the results, testing things, technical specifications and then they file the applications for conformity.[9]" Additionally, Volkswagen's Auburn Hills EEO's role was "to work directly on a working level, on a management level, on a daily basis; with E.P.A. and C.A.R.B."[10]

86.   Based upon Mr. Horn's testimony, Defendants are closely tied to the Detroit region and relevant documents and witnesses are likely located in the Detroit metropolitan area. Moreover, Volkswagen renewed its lease of office space in its Auburn Hills offices for approximately 1,100 employees in or about January, 2011.[11] This renewal further supports the notion that employees in Auburn Hills possibly participated in or witnessed the events surrounding the discovery of the defeat devices.

---

2015);http://www.autonews.com/article/20140914/OEM06/309159997/how-automakers-suppliers-are-preparing-for-tougher-emissions-rules (last visited on Oct. 5, 2015).

[9] Hearing on "Volkswagen's Emissions Cheating Allegations: Initial Questions" closed-captioning transcript dated Oct. 8, 2015 at 01:24:44.

[10] *Id.* at 02:06:30.

[11] http://www.crainsdetroit.com/article/20110110/FREE/110119976/volkswagen-plans-upgrade-at-auburn-hills-office (last visited Oct. 9, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

87.     Michigan Senator Frank Upton issued an opening statement at the

October 8, 2015 hearing and said:

> VW will inevitably pay a steep price for its dirty little secret. How it
> responds to this failure will go a long way to rebuilding, or further
> eroding, the public's trust. VW must also consider what implications
> these actions have for the thousands of Americans it employ[s],
> including at their facility in Auburn Hills, Michigan. Every single one
> of us who has ties to Michigan is proud of our rich tradition that is so
> closely intertwined with the success of the automobile. In fact,
> Michigan is one of several states that have launched their own
> investigations. Recent reports are sickening, and cannot be tolerated.
> All automakers must advance by imagination and innovation—not by
> gaming the system and breaking the law.[12]

## VI.    PLAINTIFF'S FACTS

**A.    Plaintiff Timothy Flynn**

88.     Plaintiff Tim Flynn, a resident of Gig Harbor, Washington, purchased

a new 2009 Jetta TDI from a dealership in Seattle, Washington, in 2009. For this

diesel Volkswagen, he paid approximately $21,889.

89.     Mr. Flynn chose the diesel Volkswagen because Defendants

advertised it as being a very fuel efficient car that is environmentally friendly and

EPA-compliant. He was willing to pay the premium price for the diesel model of

---

[12] Opening Statement of the Honorable Fred Upton, Subcommittee on Oversight
and Investigations Hearing on "Volkswagen's Emissions Cheating Allegations:
Initial Questions," *available at*
http://energycommerce.house.gov/sites/republicans.energycommerce.house.gov/fi
les/114/Hearings/OI/20151008/HHRG-114-IF02-MState-U000031-20151008.pdf
(dated Oct. 8, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

this Volkswagens over other vehicles, such as the gasoline Jetta, because it offered

the key features of being fuel efficient and clean.

90.     Mr. Flynn has been damaged by Volkswagen's fraudulent and

deceptive conduct. He would not have purchased his diesel Volkswagen had he

known the truth about its emissions; nor would he have paid a premium for this

car.

## VII.   CLASS ACTION ALLEGATIONS

91.     Plaintiff brings this action on behalf of himself and as a class action,

pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of

Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who are current or former
> owners and/or lessees of a diesel "Defeat Device Vehicle." Defeat
> Device Vehicles include, without limitation: Model Year ("MY")
> 2009-2015 Jetta, MY 2009-2014 Jetta Sportwagen, MY 2012-2015
> Beetle and Beetle Convertible, MY 2010-2015 Golf, MY 2015 Golf
> Sportwagen, MY 2012-2015 Passat, and MY 2010-2015 Audi A3.

92.     Excluded from the Class are individuals who have personal injury

claims resulting from the "defeat device" in the CleanDiesel system. Also excluded

from the Class are Volkswagen and its subsidiaries and affiliates; all persons who

make a timely election to be excluded from the Class; governmental entities; and

the judge to whom this case is assigned and his/her immediate family. Plaintiff

reserves the right to revise the Class definition based upon information learned

through discovery.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

93.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

94.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**1.      Numerosity: Federal Rule of Civil Procedure 23(a)(1)**

95.     The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are not less than hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Volkswagen's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

**2.      Commonality and Predominance: Federal Rule of Civil
         Procedure 23(a)(2) and 23(b)(3)**

96.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)      Whether Volkswagen engaged in the conduct alleged herein;

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(b)     Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Defeat Device Vehicles into the stream of commerce in the United States;

(c)     Whether the CleanDiesel engine system in the Defeat Device Vehicles contains a defect in that it does not comply with EPA requirements;

(d)     Whether the CleanDiesel engine systems in Defeat Device Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Defeat Device Vehicles;

(e)     Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

(f)     Whether Volkswagen designed, manufactured, marketed, and distributed Defeat Device Vehicles with a "defeat device;"

(g)     Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

(h)     Whether Plaintiff and the other Class members overpaid for their Defeat Device Vehicles;

(i)     Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

(j)     Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### 3.      Typicality: Federal Rule of Civil Procedure 23(a)(3)

97.      Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

### 4.      Adequacy: Federal Rule of Civil Procedure 23(a)(4)

98.      Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and their counsel.

### 5.      Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)

99.      Volkswagen has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

### 6.      Superiority: Federal Rule of Civil Procedure 23(b)(3)

100.      A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

financial detriment suffered by Plaintiff and the other Class members are relatively

small compared to the burden and expense that would be required to individually

litigate their claims against Volkswagen, so it would be impracticable for members

of the Class to individually seek redress for Volkswagen's wrongful conduct.

101.   Even if Class members could afford individual litigation, the court

system could not. Individualized litigation creates a potential for inconsistent or

contradictory judgments, and increases the delay and expense to all parties and the

court system. By contrast, the class action device presents far fewer management

difficulties, and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court.

## VIII.  ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

### A.   Discovery Rule Tolling

102.   The tolling doctrine was made for cases of concealment like this one.

For the following reasons, any otherwise-applicable statutes of limitation have

been tolled by the discovery rule with respect to all claims.

103.   Through the exercise of reasonable diligence, and within any

applicable statutes of limitation, Plaintiff and members of the proposed Class could

not have discovered that Volkswagen was concealing and misrepresenting the true

emissions levels of its vehicles, including but not limited to its use of defeat

devices.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

104.   As reported in *The New York Times* on September 19, 2015, the International Council on Clean Transportation, a research group, first noticed the difference between Volkswagen's emissions in testing laboratories and in normal use on the road. The International Council on Clean Transportation brought the defeat device issue to the attention of the EPA. The EPA, in turn, conducted further tests on the vehicles, and ultimately uncovered the unlawful use of the defeat device software. Thus, Volkswagen's deception with respect to its CleanDiesel engines, engine control systems, and "defeat devices" was painstakingly concealed from consumers and regulators alike.

105.   Plaintiff and the other Class members could not reasonably discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen intentionally failed to report information within its knowledge to federal and state authorities, its dealerships, or consumers.

106.   Likewise, a reasonable and diligent investigation could not have disclosed that Volkswagen had information in its sole possession about the existence of its sophisticated emissions deception and that it concealed that information, which was discovered by Plaintiff immediately before this action was filed. Plaintiff and other Class members could not have previously learned that Volkswagen valued profits over compliance with applicable federal and state emissions and consumer law.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**B.     Tolling Due To Fraudulent Concealment**

107.   Throughout the relevant time period, all applicable statutes of limitation have been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged in this Complaint.

108.   Instead of disclosing its emissions deception, or that the emissions from the Defeat Device Vehicles were far worse than represented, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

**C.     Estoppel**

109.   Volkswagen had a continuous duty to disclose to Plaintiff and the other Class members the facts that it knew about the emissions from Defeat Device Vehicles, and of those vehicles' failure to comply with federal and state laws.

110.   Although it had the duty throughout the relevant period to disclose to Plaintiff and Class members that it had engaged in the deception described in this Complaint, Volkswagen chose to evade federal and state emissions and clean air standards with respect to the Defeat Device Vehicles, and it intentionally misrepresented its blatant and deceptive lack of compliance with state law regulating vehicle emissions and clean air.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

111.   Thus, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## IX.   CAUSES OF ACTION

**A.    Claims Asserted on Behalf of the Class**

### COUNT I:
### FRAUD BY CONCEALMENT
### (Common Law)

112.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

113.   Plaintiff bring this claim on behalf of the Class.

114.   Volkswagen intentionally concealed and suppressed material facts concerning the quality and character of the Defeat Device Vehicles. As alleged in this Complaint, Volkswagen engaged in deception to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutants, which contributes to the creation of ozone and smog.

115.   The software installed on the vehicles at issue was designed nefariously to kick in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced readings that do not reflect normal operations. Reportedly, Volkswagen's deliberate, secret deception resulted in noxious emissions from these vehicles at up to 40 times applicable standards.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

116.   Plaintiff and Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and Class members did not, and could not, unravel Volkswagen's deception on their own.

117.   Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiff and Class members placed in its representations.

118.   As one representative customer, Kathy Muscato of Rochester, New York, explained in a tweet the day the EPA announced the Notice of Violation, she felt "betrayed" by Volkswagen:



KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

119.    Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its deception to regulators or consumers, including Plaintiff and Class members. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable laws and regulations.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



The Volkswagen Group
Code of Conduct

120.   Volkswagen's false representations were material to consumers, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiff and Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

121.   Volkswagen had a duty to disclose the emissions deception it engaged in with respect to the vehicles at issue because knowledge of the deception and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its deception, and because Volkswagen knew the facts were unknown to or not reasonably discoverable by Plaintiff or Class members.

122.   Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.

123.   Having volunteered to provide information to Plaintiff and the Class, Volkswagen had the duty to disclose the entire truth. These omitted and concealed facts were material because they directly affect the value of the Defeat Device Vehicles purchased or leased by Plaintiff and Class members. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

compliance or non-compliance, are material concerns to a consumer, including

with respect to the emissions certifications testing their vehicles must pass.

Volkswagen represented to Plaintiff and Class members that they were purchasing

clean diesel vehicles, and certification testing appeared to confirm this—except

that, secretly, Volkswagen had thoroughly subverted the testing process.

124.   Volkswagen actively concealed and/or suppressed these material

facts, in whole or in part, to pad and protect its profits and to avoid the perception

that its vehicles did not or could not comply with federal and state laws governing

clean air and emissions, which perception would hurt the brand's image and cost

Volkswagen money, and it did so at the expense of Plaintiff and Class members.

125.   On information and belief, Volkswagen has still not made full and

adequate disclosures, particularly as to past conduct, and continues to defraud

Plaintiff and Class members by concealing material information regarding both the

emissions qualities of its vehicles and its emissions deception.

126.   Plaintiff and Class members were unaware of the omitted material

facts referenced herein, and they would not have acted as they did if they had

known of the concealed and/or suppressed facts, in that they would not have

purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or

would not have continued to drive their heavily polluting vehicles, or would have

taken other affirmative steps in light of the information concealed from them.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiff's and Class members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiff, or Class members.

127.   Because of the concealment and/or suppression of the facts, Plaintiff and Class members have sustained damages because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiff and Class members been aware of Volkswagen's emissions deceptions with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

128.   The value of Plaintiff's and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and Class members' vehicles and made any reasonable consumer

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

reluctant to purchase any of the Defeat Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

129.   Accordingly, Volkswagen is liable to Plaintiff and Class members for damages in an amount to be proven at trial.

130.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

131.   Plaintiff pleads this count pursuant to the laws of Michigan, where Volkswagen has its significant operations, on behalf of all members of the Class. As necessary, and in the alternative, Plaintiff may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than Michigan.

## COUNT II:
## BREACH OF CONTRACT

132.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

133.   Plaintiff brings this Count on behalf of the Class.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

134.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiff and the other Class members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these Defeat Device Vehicles, would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device." Accordingly, Plaintiff and the other Class members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

135.    Each and every sale or lease of a Defeat Device Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other Class members defective Defeat Device Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design, including information known to Volkswagen rendering each Defeat Device Vehicle less safe and emissions compliant, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

136.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III:
## BREACH OF EXPRESS WARRANTY

137.   Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

138.   Plaintiff brings a cause of action against Defendants for breach of express warranty on behalf of himself and the Class.

139.   Defendants made numerous representations, descriptions, and promises to Plaintiff and Class members regarding the performance and emission controls of its diesel vehicles.

140.   For example, Volkswagen included in manuals for some or all of their Defeat Device Vehicles the warranty that its vehicles were "designed, built and equipped so as to conform at the time of sale with all applicable regulations of the United States Environmental Protection Agency," or similar language:

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## Federal Emissions Control System Defect Warranty

### For 2 years or 24,000 miles

Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc. ("Volkswagen"), the authorized United States importer of Volkswagen vehicles, warrants to the original retail purchaser or original lessee for every **model year 2015** Volkswagen vehicle imported by Volkswagen:

- Was designed, built and equipped so as to conform at the time of sale with all applicable regulations of the United States Environmental Protection Agency (EPA), and
- Is free from defects in material and workmanship which causes the vehicle to fail to conform with EPA regulations for 2 years after the date of first use or delivery of the vehicle to the original retail purchaser or original lessee or until the vehicle has been driven 24,000 miles, whichever occurs first.

141.    Volkswagen made similar representations that its emission systems complied with state law, for example:

Volkswagen of America, Inc., an operating unit of Volkswagen Group of America, Inc. (Volkswagen), warrants to the original retail purchaser or original lessee and any subsequent purchaser or lessee that every **model year 2010** Volkswagen vehicle imported by Volkswagen and certified for sale and registered in California:

- was designed, built and equipped so as to conform with all applicable requirements of the California Air Resources Board ("CARB") and

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

142.   Defendants, however, knew or should have known that its representations, descriptions, and promises were false. Defendants were aware that it had installed defeat devices in the vehicles it sold to Plaintiff and Class members.

143.   Plaintiff and Class members reasonably relied on Volkswagen's representations in purchasing "clean" diesel vehicles. Those vehicles, however, did not perform as was warranted. Unbeknownst to Plaintiff, those vehicles included devices that caused their emission reduction systems to perform at levels worse than advertised. Those devices are defects. Accordingly, Volkswagen breached its express warranty by providing a product containing defects that were never disclosed to the Plaintiff and Class members.

144.   As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiff and Class members suffered significant damages and seek the relief described below.

## COUNT IV:
## BREACH OF IMPLIED WARRANTY

145.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

146.   Plaintiff brings this cause of action against Volkswagen for breach of implied warranty on behalf of themselves and the Class.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

147.   Volkswagen made numerous representations, descriptions, and promises to Plaintiff and Class members regarding the functionality of Volkswagen's "clean" diesel technology.

148.   Plaintiff and Class members reasonably relied on Volkswagen's representations in purchasing the Defeat Device Vehicles.

149.   As set forth throughout this Complaint, Volkswagen knew that its representations, descriptions and promises regarding its diesel engines were false.

150.   When Plaintiff and Class members purchased Volkswagen's diesel vehicles, they did not conform to the promises or affirmations of fact made in Volkswagen's promotional materials, including that the vehicles were designed to meet the most demanding environmental standards. Instead, as alleged above, those vehicles were designed to cheat those standards, and the vehicles emitted far higher levels of pollution than promised.

151.   The Defeat Device Vehicles thus failed to conform to Volkswagen's implied warranty regarding their functionality.

152.   As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiff and Class members suffered significant injury when Volkswagen sold them cars that, it is now clear, are worth far less than the price Plaintiff and Class members paid for them. Accordingly, Plaintiff and the Class seek the relief described below.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT V:
## IMPLIED AND WRITTEN WARRANTY
### Magnuson - Moss Warranty Act (15 U.S.C. §§ 2301, *et seq.*)

153.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

154.   Plaintiff asserts this cause of action on behalf of himself and the other members of the Class.

155.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 15 U.S.C. § 2310(d).

156.   Volkswagen's Defeat Device Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

157.   Plaintiff and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

158.   Volkswagen is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

159.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

160.   As described herein, Volkswagen provided Plaintiff and Class members with "implied warranties" and "written warranties" as those term are defined in 15 U.S.C. § 2301.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

161.    Volkswagen has breached these warranties as described in more detail above. Without limitation, Volkswagen's Defeat Device vehicles are defective, as described above, which resulted in the problems and failures also described above.

162.    By Volkswagen's conduct as described herein, including Volkswagen's knowledge of the defects inherent in the vehicles and its action, and inaction, in the face of the knowledge, Volkswagen has failed to comply with its obligations under its written and implied promises, warranties, and representations.

163.    In its capacity as a warrantor, and by the conduct described herein, any attempts by Volkswagen to limit the implied warranties in a manner that would exclude coverage of the defective software and systems is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective the software and supporting systems is null and void.

164.    All jurisdictional prerequisites have been satisfied.

165.    Plaintiff and members of the Class are in privity with Volkswagen in that they purchased the software from Volkswagen or its agents.

166.    As a result of Volkswagen's breach of warranties, Plaintiff and Class members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. §2310.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT VI:
## UNJUST ENRICHMENT

167.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

168.   Plaintiff brings this count on behalf of himself and, where applicable, the Class.

169.   Plaintiff and members of the Class conferred a benefit on Defendants by, inter alia, using (and paying for) its vehicles.

170.   Defendants have retained this benefit, and know of and appreciate this benefit.

171.   Defendants were and continues to be unjustly enriched at the expense of Plaintiff and Class members.

172.   Defendants should be required to disgorge this unjust enrichment.

## COUNT VII:
## VIOLATION OF RACKETEER INFLUENCED AND CORRUPT
## ORGANIZATIONS ACT ("RICO")
## 18 U.S.C. §§ 1961, *et seq.*

173.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

174.   This Count, which alleges substantive violations of RICO is asserted against the Defendants on behalf of the Class for actual damages, treble damages, and equitable relief pursuant to 18 U.S.C. § 1964.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

175.   18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt."

### The Defeat Device Enterprise

176.   On October 4, 2015, *The New York Times* reported Volkswagen's Defeat Device scheme began as early as 2008. "Volkswagen installed software designed to cheat on emissions tests in 2008 after realizing that a new diesel engine, developed at great expense, could not meet pollution standards in the United States and other countries, people with knowledge of the automaker's internal inquiry said.… [r]ather than stop production of the engine and throw out years of work and investment, managers decided to cheat."

177.   As detailed below, upon information and belief, in 2007, three individuals took or were appointed to leadership positions at Volkswagen AG, and/or its subsidiaries Audi AG and Porsche AG: Chief Executive Officer Martin Winterkorn ("Winterkorn"); Porsche's head of Engine and Transmission Development Wolfgang Hatz ("Hatz"); and Audi's head of Technical Development Ulrich Hackenberg ("Hackenberg") (collectively, "the Individual Members"). These individuals exploited their positions of authority as well as the legitimacy and infrastructure of Volkswagen AG, Volkswagen of America, Inc.,

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Audi AG (collectively, "the VW Corporate Members"), as well as Robert Bosch GmbH ("Bosch"), a German auto component manufacturer that developed the systems used by the criminal enterprise as "defeat devices," to perpetrate fraud against American consumers as well as state and federal regulators for their own personal and profession gain.

178.    When news that Volkswagen AG used "defeat devices" to evade state and federal emissions was made public, each of the Individual Members was immediately identified as being at "at the heart of the affair." Winterkorn resigned while Hackenberg and Hatz, along with Volkswagen's head of research and development, Heinz-Jakob Neusser, were suspended by Volkswagen AG's board of management as a result of their reported involvement in the "defeat device" scandal.

179.    The Individual Members exploited their leadership positions at Volkswagen AG, Volkswagen Group of America, Inc. and/or Audi AG and Porsche, as well as the legitimacy and infrastructure of those organizations and Bosch, for personal and professional gain by conducting an enterprise of associated-in-fact entities (the "Defeat Device Enterprise"), comprised of the Individual Members, the Volkswagen Corporate Members, and Bosch (collectively, "the Enterprise Members"), designed to secure the leadership positions of the Individual Members and increase the sales of Volkswagen-and

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Audi-brand diesel vehicles in the United States and elsewhere by concealing and/or misrepresenting the vehicles' emission levels.

180.   Hatz and Hackenberg, specifically, used their positions of authority and control at a Volkswagen AG subsidiaries—Audi and Porsche—to infiltrate the Volkswagen Group Board of Management, and exercise control over the Group to intentionally conceal and suppress material facts concerning the quality and character of the Defeat Device Vehicles and to evade federal and state vehicle emissions standards by installing software specifically designed to conceal its vehicles' emissions of nitrous oxides.

181.   The Volkswagen Corporate Members and/or the Individual Members compelled and/or condoned the purchase of the "Defeat Devices," comprising in part engine management systems and software designed by Bosch. Bosch is the world's largest manufacturer of automotive components, and maintains a continuous and ongoing relationship with the Volkswagen Corporate Members. Volkswagen Corporate Members and/or the Individual Members used the systems provided by Bosch as the basis for the Defeat Device, installed them in the Defeat Device Vehicles, and distributed the Defeat Device Vehicles worldwide, including but not limited to the 50 United States and the District of Columbia and conducted a campaign of misrepresentations designed to conceal the true emission levels of affected vehicles and conceal their use of defeat devices.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

182.    The role of each member of the Default Device Enterprise is described below.

## Martin Winterkorn – CEO of Volkswagen AG

183.    Martin Winterkorn succeeded Bernd Pischetsrieder as CEO of Volkswagen AG in 2007.

184.    In 2007, Volkswagen was struggling, specifically in the U.S. market, where Volkswagen's AG's performance was described as "disastrous":

> The brand's strategy of wooing customers with premium, uplevel products has not paid off; it is lacking new, interesting, and affordable products in key segments; and its costly production site in Chattanooga, Tennessee, is woefully underutilized.[13]

185.    Winterkorn was also facing a challenge to his leadership from auto magnate and long-time Volkswagen executive Ferdinand Piëch, who sought to oust Winterkorn as CEO.[14]

186.    In order to secure his leadership position, Winterkorn committed to an unprecedented gambit, described as:

> [a] plan to . . . triple [Volkswagen] sales in the United States in just a decade – setting it on a course to sweep by Toyota to become the world's largest automaker . . . by betting on diesel-powered cars . . . [and] promising high mileage and low emissions without sacrificing performance.[15]

---

[13] Anton Watts, "VW Drama: Why Piech Wants Winterkorn Out—and What the Future May Hold," *Car and Driver* (Apr. 16, 2015).

[14] *Id.*

[15] Danny Hakim, Aaron Kessler, and Jack Ewing, "As Volkswagen Pushed to Be No. 1, Ambitions Fueled a Scandal," *New York Times* (Sept. 26, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

187.    Winterkorn's promise to make Volkswagen the "world's largest seller of diesel-powered cars" secured his position as CEO and Piëch was ousted from the organization by Volkwagen's Management Board.

188.    However, as is now clear, Winterkorn's promise to the Board to overtake Toyota in the American market through the development of low-emission, consumer-friendly diesel passenger vehicles, while favorable to the investor's bottom line was—absent extraordinary breakthroughs in engineering—a practical impossibility. In short, Winterkorn overpromised.

189.    Prior to 2007, when Winterkorn became CEO, in order to reduce emissions from diesel fuel, Volkswagen's diesel-powered vehicles, were equipped with BlueTEC, a selective catalytic reduction (SCR) system that Volkswagen leased from Daimler AG. To function, BlueTEC requires vehicles to carry an onboard tank of urea crystals in mineralized water, a feature which adds to the initial purchase price of the vehicle, and that must be refilled every 10,000 miles at a cost of around $300, which reduces any cost savings a consumer might realize by using diesel instead of gasoline.

190.    In 2007, the year that Winterkorn took over as CEO, Volkswagen took two major steps to reverse this trend. First, Volkswagen ceased the use of BlueTEC in several of its models in favor of developing its own emissions-reduction technology, which is now known to rely on the defeat devices which are

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the subject of this suit. Second, two executives of Volkswagen AG subsidiaries,

Hackenberg and Hatz, were given leadership roles at Volkswagen.

191. Hatz and Hackenberg were reportedly hand-picked to play a major

role in implementing Winterkorn's plan to make Volkswagen the world's number-

one automaker, through the development of consumer-friendly, low-emission

diesel vehicles.

192. By implementing these steps and, in turn, economically benefitting

from the Default Device Enterprise, Winterkorn delivered on his promise to sell

more diesel cars in the U.S. than every other brand combined. However,

Winterkorn's misdeeds came at a price and he was forced to resign in September

2015, following allegations that he knew or should have known of the defeat

devices installed in Volkswagen vehicles.

193. Upon stepping down, Winterkorn asserted he was unaware of any

wrongdoing. However, that assertion is belied by newly-disclosed information that

Volkswagen engineers discovered the use of the Defeat Device in 2011 and

brought it, and the fact that the device was illegal, to the attention of company

management. Volkswagen apparently ignored that report and continued their

fraudulent and deceptive practices.

194. In their leadership positions within Volkswagen, the Individual

Members ordered the development of and/or personally developed each of the

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

affected diesel-vehicle models that are the subject of this suit. Also in those positions, each Individual Member had access to and authority over the engine development and technical details of each affected Volkswagen vehicle that is the subject of this suit.

### Ulrich Hackenberg

195.   Hackenberg joined Audi AG in 1989 and was put in charge of Audi Concept Definition. Later, he took over technical project management for Audi's entire product range, including the Audi A3, one of the affected vehicle models.[16]

196.   On February 1, 2007, Hackenberg was appointed as a Member of Volkswagen's Brand Board of Development, where he was responsible for the technical development of all the Volkswagen Group's brands.[17] Under his leadership, three new models were developed: the Golf, the Polo, and the Passat, two of which are Defeat Device Vehicles.

---

[16] Audi, "Board of Management," http://www.audiusa.com/newsroom/corporate/audi-ag-board-of-management/ulrich-hackenberg, (last accessed Sept 26, 2015) ("In 1985 Prof. Dr. Hackenberg joined AUDI AG, where in 1989 he was put in charge of Concept Definition and later took over the technical project management of the entire product range. This included the models Audi 80, A3, A4, A6, A8, TT and A2.").

[17] Audi, "Board of Management," http://www.audiusa.com/newsroom/corporate/audi-ag-board-of-management/ulrich-hackenberg, (last accessed Sept. 26, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

197.   On July 1, 2013, Hackenberg was appointed to the Board of Management of Audi AG, and given the responsibility to head up Audi AG's Technical Development.

198.   As head of technical development at Audi AG, Hackenberg spearheaded the development of Audi's TDI "CleanDiesel" engines. As he explained in a press release, his strategy for Audi's technical development included the following:

> [P]ushing forward with development in . . . our TDI engines in the USA – our clean diesel offensive is bearing substantial fruit. In China, too, we are already introducing the first clean diesel models and watching developments there very closely. We also expect a great deal from g-tron technology, the most sustainable type of gas drive.[18]

199.   In his role as head of technical development at Audi AG, Hackenberg had extensive knowledge of the technical details of the TDI "CleanDiesel" models that he developed, and was reportedly suspended after reports that he had knowledge that the Defeat Device Vehicles used Defeat Devices to evade federal and state vehicle emissions standards.

### Wolfgang Hatz

200.   Wolfgang Hatz joined Volkswagen in 2001 and at various times directed engine development for the Porsche, Audi, and Volkswagen brands.

---

[18] Audi AG, "Gentlemen Start Your Engines," http://audi-encounter.com/magazine/technology/01-2015/126-gentlemen-start-your-engines (2014).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

201.   In his role as the head of Engines and Transmissions Development, Hatz supervised the development of the engines and transmissions for the Defeat Device Vehicles and had knowledge of the technical details of each those vehicles.

202.   Hatz was reportedly suspended from his position in September 2015 after reports that he had knowledge that the affected Audi and Volkswagen vehicles used Defeat Devices to evade federal and state vehicle emissions standards.

**Allegations Common to the Individual Members**

203.   Upon information and belief, in their leadership roles at Volkswagen, the Individual Members used Volkswagen AG and its subsidiaries including Volkswagen of America, Inc., Volkswagen's resources, as well as supplier Bosch, to orchestrate a scheme to fulfill Winterkorn's promise to the Board to triple Volkswagen's sales in the United States through the sale of low-emission diesel vehicles by ordering, developing, and/or installing defeat devices in the Defeat Device Vehicles and, through a pattern of racketeering activity, misrepresenting and/or concealing the true emissions levels of those vehicles.

204.   In addition to the pattern of racketeering detailed herein, the Individual Members exploited Volkswagen's, its subsidiaries', and Bosch's resources, including employees and engineers, in order to further the cover-up. For example, according to reports from "[e]missions testers at the company's site in

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Westlake Village, California [which] evaluated all [Volkswagen] cars," VW and

Audi executives orchestrated a cover-up from abroad:

> If any vehicle failed to meet emissions targets, a team of engineers from
> Volkswagen headquarters [in Wolfsburg, Germany] or luxury brand
> Audi's base in Ingolstadt [Germany] was flown in…. After the group
> had tinkered with the vehicle for about a week, the car would then pass
> the test. VW had no engineers in the U.S. able to create the mechanism
> that cheated on the test or who could fix emissions problems, according
> to two other people.[19]

205.   In other words, any vehicles that failed emissions targets received

special treatment—that is, was fitted with a Defeat Device—and then the vehicle

would pass the emissions test.

206.   In their leadership roles at Volkswagen AG and its subsidiaries, the

Individual Members used Volkswagen's infrastructure to distribute Defeat Device

Vehicles to the United States and elsewhere.

207.   In their leadership roles at Volkswagen AG and its subsidiaries, the

Individual Members used Volkswagen's infrastructure to orchestrate, and/or

approve, a marketing campaign designed to misrepresent the emission levels of

affected vehicles and defraud consumers.

---

[19] Alex Webb and David Welch, "Volkswagen Said to Manage Faked Test Results
From Germany," (Sept. 25, 2015).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

208.   As a result of the Individual Members' misuse of Volkswagen resources and infrastructure, they achieved considerable personal and financial success.

### Allegations Against the Volkswagen Corporate Members

209.   The Volkswagen Corporate Members developed, conducted, and approved a marketing campaign designed to misrepresent the emission levels of affected vehicles and to defraud consumers based upon the racketeering activity described below.

210.   The Volkswagen Corporate Members collaborated and colluded with each other with and the Individual Members to conceal and suppress material facts concerning the quality and character of the affected vehicles and to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutants.

### Allegations Against Robert Bosch GmbH ("Bosch")

211.   Bosch is the world's largest manufacturer of automotive components.

212.   On information and belief, Bosch developed the engine and emissions control systems and software that provided the basis for the Defeat Devices, and sold them to Volkswagen.

213.   On information and belief, Bosch was aware that the use of "test" or "dynometer" operation modes programmed into engine management software as

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Defeat Devices to evade emissions requirements is illegal in the United States, but nevertheless sold the systems and software to Volkswagen AG.

214.   In 2007, when Volkswagen was developing the TDI engines that are the subject of the present suit using Bosch engine management software, Bosch issued a letter to the Volkswagen AG warning them that the use of "test" or "dynometer" modes included in the software during normal operation of a vehicle was illegal.

215.   Bosch was reckless in not being aware of Winterkorn's promised ambitions to the Board to overtake Toyota's sales in the American market and to become the largest auto manufacturer in the world, through the sale of low-emission diesel passenger vehicles.

216.   Bosch was reckless in not being aware that the illegal use of its software as a Defeat Device would help to achieve Winterkorn's promise.

217.   Bosch was or should have been further aware that sales of Volkswagen vehicles that had Defeat Devices installed were increasing at an unprecedented rate, as indicated by the below graph from *The Economist*:

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



218.   Based upon the above-alleged information Bosch, as one of the largest and most successful component manufacturers in the world, knew or should have known, or was reckless in not knowing, that engine management systems and software were being used as part of Defeat Devices illegally used in Volkswagen vehicles sold in the United States and around the world.

## Enterprise Allegations

219.   The Individual Members, the Volkswagen Corporate Members, and Bosch are all "persons" within the meaning of 18 U.S.C. § 1961(3).

220.   The Defeat Device Enterprise engaged in, and affected- interstate and foreign commerce, and is an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(3) and consists of "persons" associated together for the common

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

purpose of employing the multiple, deceptive, abusive, illegal, and/or fraudulent acts described herein.

221.   The Defeat Device Enterprise was formed in or about 2007 and continues to the present day.

222.   On information and belief, the Individual Members and the Volkswagen Corporate Members, violated 18 U.S.C. § 1962(c) by participating in or conducting the affairs of the Defeat Device Enterprise and/or engaging in a pattern of repeatedly defrauding consumers.

223.   In addition, Bosch violated 18 U.S.C. § 1962(c) by participating in or conducting the affairs of the Defect Device Enterprise through a pattern that it knew or should have known defrauded consumers.

224.   The Enterprise undertook a fraudulent scheme to sell Defect Device Vehicles based upon the false and misleading misrepresentations and omissions set forth herein.

225.   In furtherance of the scheme, the Volkswagen Corporate Members and/or Individual Members engaged in thousands of acts of mail fraud and wire fraud, each of which constitute "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1), as will be further detailed below.

226.   The Defeat Device Enterprise is an ongoing organization with an ascertainable structure and a framework for making and carrying out decisions,

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

that functions as a continuing unit with established duties, and that is separate and distinct from the pattern of racketeering activity in which Enterprise members have engaged and are engaging. Each member of the Enterprise performs a role in furtherance of the scheme consistent with its structure. The Enterprise was controlled by the Volkswagen Corporate Members and/or the Individual Members who developed the Defeat Device scheme and developed the cars and engines that would put it into place. Upon direction from the Volkswagen Corporate Members and/or Individual Members, Bosch knew was reckless in not knowing the illegal purpose for which the defeat devices software it developed and supplied to the Volkswagen Corporate Members was being used, and the Volkswagen Corporate Members distributed the vehicles alongside a marketing campaign designed to misrepresent the Defeat Device Vehicles' emission levels and defraud consumers.

227.   The Enterprise also exists for the legitimate purpose of developing, manufacturing, and selling automobiles and operates within a framework that includes the sale of other automobiles not affected by fraud.

228.   Alternatively, the Enterprise was formed solely for the purpose of carrying out the pattern of racketeering acts described herein.

229.   The Enterprise was and is used by the Individual Members and/or the Volkswagen Corporate Members to effectuate a pattern of racketeering activity. All members of the Defeat Device Enterprise played a part in a fraudulent scheme

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to sell affected vehicles through the use of false or misleading statements related to

the power, fuel efficiency, and emissions levels of the Defeat Device Vehicles.

230.   The members of the Enterprise shared a common purpose to develop

and sell vehicles, of which certain models included a functioning Defeat Device.

231.   On information and belief, the Volkswagen Corporate Members and

Individual Members of the Enterprise also shared a common purpose which

amounted to fraud: to misrepresent the emission levels, fuel efficiency,

performance, and power of affected Volkswagen vehicles and/or to conceal

information regarding the use of Defeat Devices in the Volkswagen Defeat Device

Vehicles to evade state and federal emission regulations. Bosch knew or was

reckless in not knowing that this was occurring and that Bosch software was being

used to achieve it.

232.   Each member of the Enterprise benefits from the common purpose.

For the Volkswagen Corporate Members, the purpose was to avoid the additional

costs associated with developing and installing low-emissions diesel technology

that would also be attractive to consumers, and to sell and lease more vehicles to

consumers based upon false representations of the Defeat Device Vehicles'

performance and emissions levels. Succinctly put, the common purpose was to

profit from the myth of the "holy grail" of high performance, efficient, low

emissions vehicles. For the Individual Members, the purpose of the scheme was to

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

further their own professional and pecuniary interests through misuse of the Corporate Members' resources. For Bosch, the purpose was to increase the sales of components to Volkswagen and thus realize monetary profit from the scheme.

233.   The Defeat Device Enterprise is separate and distinct from the pattern of racketeering activity. The Enterprise was an ongoing organization or group and existed to advance the interests of the individual entities that comprise its membership, as noted above.

234.   The Defeat Device Enterprise, whose activities affected interstate and foreign commerce, is an association in fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of persons associated together for the above described common purposes.

235.   Volkswagen AG and its subsidiaries, Volkswagen Group America, Inc. and Audi AG; Bosch; Martin Winterkorn, Ulrich Hackenberg, and Wolfgang Hatz are entities separate and distinct from one another and from the Enterprise. All of the Enterprise members are independent legal entities with the authority to act independently of the Enterprise and the other Enterprise members.

236.   The Individual Members, the Volkswagen Corporate Members, and Bosch, and their respective officers and employees, together, knowingly or recklessly, developed the Defeat Devices and the Defeat Device Vehicles and/or the operative technology in the Defect Device Vehicles.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

237.   The Individual Members, the Volkswagen Corporate Members, and their respective officers and employees developed the false, misleading and/or deceptive advertisements described above.

## Pattern of Racketeering Activity

238.   As set forth above, the Corporate Members and the Individual Members conducted and participated in the affairs of the Enterprise.

239.   In furtherance of the scheme, the Volkswagen Corporate Members engaged in thousands, or more, acts of mail fraud and wire fraud, each of which constitute "racketeering activity," as the term is defined in 18 U.S.C. § 1961(1).

240.   Specifically, the pattern consisted of numerous and repeated violations of the federal mail and wire fraud statutes—namely 18 U.S.C. §§ 1341 and 1343—that prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud.

241.   The Volkswagen Corporate Members and/or Individual Members, with the assistance and collaboration of the other persons associated in fact with the Enterprise, devised and employed a fraudulent scheme to suppress and conceal the true emissions levels of the affected vehicles and by use of the mails, telephone and internet transmitted, or caused to be transmitted, by means of wire communication traveling in interstate or foreign commerce, writing(s) and/or signal(s), including but not limited to Volkswagen and Audi's websites, Service

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Bulletins to dealers, vehicle owners' manuals, press releases, advertisements, communications with federal and state regulators, and communications with other members of the enterprise, for the purpose of executing that scheme or artifice to defraud, in violation of 18 U.S.C. §§ 1341 and 1343. Defendants' pattern of conduct is exemplified below.

242.   In or about April, 2015, Volkswagen sent letters to owners of Defeat Device Vehicles instructing them to take their cars to a dealer in order to install a software update that would alter their vehicles' tailpipe emissions so as to "optimize . . . operating efficiency." In reality, the software update was intended only to continue to evade state emissions tests and the letter was intended to (and did) perpetrate fraud against consumers and government regulators. A copy of the letter is attached hereto as Exhibit C.

243.   In December, 2014, in response to concerns raised by the California Air Resources Board and the EPA, Volkswagen was permitted to issue recall letters for certain 2-liter diesel 2010-2014 models. The letters indicated that the owners of certain Defeat Device Vehicles needed to return their cars in order to install a software update that would fix an issue with a malfunctioning indicator light. Specifically, it indicated that "if the [light] illuminates for any reason, your

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

vehicle will not pass an . . . emission inspection."[20] In reality, the update was intended only to evade state emission tests and the letter was intended to perpetrate fraud against consumers and government regulators.

244.   As detailed above, Volkswagen has continuously and, as recently as September 17, 2015, in television, internet and print advertisements, falsely represented that its Defeat Device Vehicles were "clean diesel" vehicles, which emitted less greenhouse gas than other models, when in fact they emitted 10 to 40 times more greenhouse gases than legally permitted by state a federal regulations.

245.   In addition to the foregoing, each download or view of one of the advertisements described above constituted a separate offense.

246.   Continually, and as recently as September 17, 2015, Volkswagen transmitted fraudulent reports to the EPA indicating that their Defeat Device Vehicles met emissions targets as required by law,[21] when in fact they emit 10 to 40 times more greenhouse gases than permitted by state and federal regulation.

---

[20] Mike Blake, "Exclusive: VW recall letters in April warned of an emissions glitch," *Reuters Business* (Sept. 23, 2015).
[21] Alex Webb and David Welch, "Volkswagen Said to Manage Faked Test Results From Germany," (Sept. 25, 2015.)

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## Plaintiff's Injuries and Damages

247.   Plaintiff and the Class was damaged and injured in their business and property by reason of the Defeat Device Enterprise's conduct in at least the following ways:

a.   Plaintiff and Class members who purchased or leased Defeat Device Vehicles were fraudulently induced into making those transactions and/or paying more than they otherwise would have had the true emissions and performance information of the Defeat Device Vehicles been revealed.

b.   The value of the vehicles Plaintiff and Class members purchased has been reduced, and if they can resell their vehicles at all, the resale value has decreased dramatically.

248.   By reason of the foregoing, Volkswagen, has unlawfully, knowingly, and willfully conducted and participated directly or indirectly in the foregoing Defeat Device Enterprise through a pattern of racketeering activity in violation or attempted violation of 18 U.S.C. § 1962(c).

249.   These violations of 18 U.S.C. § 1962(c) by Volkswagen have directly and proximately caused Plaintiff's and Class members' injuries and damages as set forth above.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

250.   Plaintiff and Class members are entitled to bring this action for three times their actual damages, as well as punitive damages, equitable relief, and their costs and reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

**B.   State-Specific Claims**

**COUNT VIII:**
**VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT**
**(Mich. Comp. Laws §§ 445.901, *et seq.*)**

251.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

252.   Plaintiff brings this Count on behalf of the Michigan members of the Class.

253.   The Michigan Consumer Protection Act ("MCPA" or "Act") protects consumers from "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903.

254.   Plaintiff's and the Class members' are persons under the Act. *Id.* § 445.902.

255.   Defendants engage in trade or commerce as defined by the Act by designing, marketing, and selling diesel vehicles in Michigan and elsewhere.

256.   As described herein, in designing, marketing, and selling Defeat Device Vehicles, Defendants engaged in an unlawful method, act, or practice in

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

trade or commerce, namely the intentional deception of regulators and the public regarding the true emissions characteristics of its "clean" diesel engines.

257.   Defendants' unlawful acts were not authorized by any law or regulation; no law permits designing, manufacturing, and selling or leasing vehicles with "defeat devices" intentionally engineered to cheat regulatory requirements.

258.   As a result of Defendants' unlawful conduct, Plaintiff and Class members have suffered losses: they paid a premium for vehicles that do not perform as advertised, and those vehicles are now worth substantially less due to the recall.

## COUNT VIX:
## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT ("CPA")
## (RCW §§ 719.86, *et seq.*)

259.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

260.   Plaintiff asserts this Count on behalf of the Washington State members of the Class.

261.   This claim arises under the Washington Consumer Protection Act, RCW §§ 19.86, *et seq.* ("CPA").

262.   At all relevant times, Defendants engaged in "trade" and/or "commerce" within the meaning of RCW § 19.86.010.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

263.   The CPA broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or business. RCW § 19.86.0120.

264.   Defendants made uniform representations that its diesel vehicles were of a particular standard, quality, or grade when they were and are not, and that they would perform as represented when they did not, and, as set forth above, made false and/or misleading statements regarding the capacity and characteristics of Defeat Device vehicles that, as set forth above, were unfair or deceptive, had and continue to have the capacity to deceive the public, cause injury to Washington Plaintiffs and were made in violation of the CPA.

265.   In their communications with and disclosures to Washington members of the Class, Defendants intentionally concealed and/or failed to disclose that the Defeat Device Vehicles included a software program designed to cheat emissions testing, and that the true emissions of those vehicles were far higher than claimed. Those omissions were unfair or deceptive, had and continue to have the capacity to deceive the public, cause injury to Washingtonians, and were made in clear violation of the CPA.

266.   Defendants had exclusive knowledge that the Defeat Device Vehicles had and have the defects set forth above, facts unknown to Washington members

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

of the Class. Defendants' exclusive knowledge of these material facts gave rise to a duty to disclose such facts, which it failed to perform.

267.   The representations made by Defendants and the facts concealed and/or not disclosed by Defendants are material facts that were likely to deceive reasonable consumers, and that a reasonable consumer would have relied on in deciding whether or not to purchase a Defeat Device Vehicle manufactured by Defendants.

268.   The representations made by Defendants and the facts concealed and/or not disclosed by Defendants detrimentally affected the public interest. There is an inherent public interest in reducing emissions from vehicles, and properly advertising emission levels. The Defeat Device Vehicles did not operate as advertised and thus negatively affected the public interest.

269.   Washington members of the Class justifiably acted or relied to their detriment on Defendants' affirmative representations and the concealed and/or non-disclosed facts as evidenced by their purchase and/or use of the defective Defeat Device Vehicles.

270.   Had Defendants disclosed all material information regarding the defeat devices, Washington members of the Class would not have purchased and used the Defeat Device Vehicles.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

271.    Defendants knew, or was reckless in not knowing, that its statements about its "CleanDiesel" vehicles were false and/or misleading.

272.    By the conduct described herein, Defendants engaged in unfair methods of competition and/or unfair or deceptive act or practices in the conduct of business, trade, or commerce.

273.    As a direct and proximate result of Defendants' violations of the forgoing law, the Washington members of the Class have been injured.

274.    The Washington members of the Class have been damaged and are entitled to all of the damages, remedies, fees, and costs available under the CPA.

275.    The Washington Plaintiff will provide or already has provided any required notice to appropriate entities regarding Defendants' unfair and deceptive trade practices.

## X.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A.    Certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel;

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

B.      An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Injunctive relief in the form of a recall or free replacement;

D.      Public injunctive relief necessary to protect public health and welfare, and to remediate the environmental harm caused by the Defeat Device Vehicles' unlawful emissions;

E.      Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

F.      Revocation of acceptance;

G.      Damages under the Magnuson-Moss Warranty Act;

H.      For treble and/or punitive damages as permitted by applicable laws;

I.      An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

J.      An award of costs and attorneys' fees; and

K.      Such other or further relief as may be appropriate.

## XI.    DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

RESPECTFULLY SUBMITTED this 14th day of October, 2015.

**KELLER ROHRBACK L.L.P.**

*/s/ Tana Lin*
Lynn Lincoln Sarko
Amy Williams-Derry
Tana Lin, Bar No. P63125
Gretchen Freeman Cappio
Daniel Mensher
Ryan McDevitt
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
awilliams-derry@kellerrohrback.com
tlin@kellerrohrback.com
gcappio@kellerrohrback.com
dmensher@kellerrohrback.com
rmcdevitt@kellerrohrback.com

Matthew Preusch
KELLER ROHRBACK L.L.P.
1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496
Fax: (805) 456-1497
mpreusch@kellerrohrback.com

**Attorneys for Plaintiff and the Class**

CLASS ACTION COMPLAINT - Page 84

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384